UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARMON FOODSERVICE TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-CV-1491-ZMB |
| DUKE MANUFACTURING CO., | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Duke Manufacturing Co.'s Motion to Stay Pending *Inter Partes* Review Proceedings. Doc. 58. Because it is not presently clear that staying this action will simplify the issues and facilitate trial, the Court denies Duke's motion without prejudice. That said, the Court is inclined to grant a renewed motion to stay this action if the Patent Trial and Appeal Board (PTAB) decides to institute any of Duke's pending petitions.

**BACKGROUND**

Plaintiff Marmon Foodservice Technologies, Inc. filed this patent-infringement action in October 2025. Doc. 1. Marmon alleges that Duke, a competing manufacturer of foodservice equipment, infringed seven of its utility patents and two design patents. Doc. 55 ¶¶ 36–38, 75–156. Nine months later, Duke filed its first *inter partes review* (IPR) petition with the PTAB, "seeking invalidation of all the '002 [Utility] Patent's claims." Doc. 59 at 3; *see* Doc. 59-2. In September 2026, the Court partially granted Duke's motion to dismiss and issued a scheduling order, setting both a *Markman* hearing and trial. Docs. 50–52. Earlier this month, and shortly before its statutory deadline, Duke filed IPR petitions for the remaining utility patents. Doc. 59 at 3; *see* 35 U.S.C. § 315(b). Duke then moved to stay this case "pending the resolution of [its] pending IPR proceedings." Doc. 58. After Marmon opposed the stay and Duke filed its reply, *see* Docs. 66, 68, the motion is ripe for review.

## DISCUSSION

The parties agree that the Court has the authority to grant a stay and recognize the same three factors that inform this discretionary decision. Doc. 59 at 5; Doc. 66 at 2. Perhaps unsurprisingly, however, the parties disagree whether those factors support a stay. Doc. 59 at 5–12; Doc. 66 at 2–10. While admittedly a close call, the Court concludes that a stay is not warranted at this time.

In patent cases, district courts possess the inherent power "to stay a case pending IPR at the request of the defendant." *Ollnova Techs., Ltd. v. Emerson Elec. Co.*, No. 4:22-CV-1387-JAR, 2023 WL 2784777, at *2 (E.D. Mo. Apr. 5, 2023) (citing *Procter & Gamble Co. v. Kraft Foods Glob.*, 549 F.3d 842, 849 (Fed. Cir. 2008)). To determine whether a stay pending IPR is appropriate, "courts consider (1) whether discovery is complete and a trial date has been set; (2) whether a stay of litigation will simplify the issues and facilitate the trial; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage for the non-moving party." *Id.* (citation omitted). "The moving party bears the burden of demonstrating that a stay is appropriate." *Semco v. Trane U.S.*, 2019 WL 13159881, at *3 (W.D. Mo. Jan. 2, 2019) (citation omitted). Here, the first factor favors a stay, the latter two cut against it.

### I. Stage of the Case

The first factor—whether discovery is complete and a trial date has been set—weighs slightly in favor of a stay. Duke argues that "[t]he case is in its infancy with its most significant milestones ahead," Doc. 59 at 5–7, while Marmon emphasizes that "the Court has scheduled a Markman hearing for June 2027 and a trial for April 2028" and contends "this case is [now] proceeding on a brisk schedule to achieve [those] dates." Doc. 66 at 7. While the Court has set a trial date, Doc. 52 at 4, a patent case is "still in its infancy" when, as here, "discovery has just begun[] and no depositions have been taken," *see Masa v. Apple*, No. 4:15-CV-889-AGF, 2016 WL 2622395, at *2 (E.D. Mo. May 9, 2016); *see* Doc. 59 at 5. And courts have found that the "[first] factor weighs in favor of a stay if there remains . . . significant milestones to meet, such as

the completion of claim construction, expert discovery, or summary judgment." *See CANVS Corp. v. United States*, 118 Fed. Cl. 587, 595 (2014) (collecting cases). Because none of those significant milestones have been reached, Doc. 59 at 5, the first factor weighs slightly in favor of a stay.

## II. Potential for Prejudice

The third factor—whether a stay would unduly prejudice or present a clear tactical disadvantage for the non-moving party—weighs slightly against a stay. Duke contends that this factor favors a stay because Marmon does not seek a temporary restraining order or a preliminary injunction, "the mere fact Duke and Marmon are direct competitors is not controlling," and "there is no evidence of a dilatory motive or tactical advantage to Duke if a stay is granted." Doc. 59 at 10–12. Marmon argues that it would be unduly prejudiced by a stay because Duke is a direct competitor, "delay inherently harms a non-moving party by prolonging resolution of the dispute," and Duke delayed in filing its IPR petitions. Doc. 66 at 8–10. "The mere potential for delay . . . is insufficient to establish undue prejudice." *Intell. Ventures II v. Com. Bancshares*, 2014 WL 2511308, at 3 (W.D. Mo. June 4, 2014) (citation omitted). That said, prejudice is more likely to occur where, as here, the parties are direct competitors because "a delay might result in loss of market share and an erosion of goodwill." *Id.* And "[s]everal courts, including those in the Eighth Circuit, have weighed this factor against granting a stay where the moving party failed to file its petitions for review in a timely manner." *Buergofol GmbH v. Omega Liner Co.*, 2024 WL 2805362, at *2 (D.S.D. May 31, 2024) (collecting cases). While the Court recognizes that drafting an IPR petition is no simple undertaking, *see* Doc. 59 at 9 ("[e]ach IPR petition is lengthy with thousands of pages of supporting documents."), and there is nothing to suggest that Duke acted with dilatory intent, Duke likely could have filed its petitions earlier—particularly given the relative inactivity in this case in the months after the complaint was filed. Taken together, the third factor weighs slightly against staying this action.

### III. Potential for Simplification

With the other factors offsetting, the second factor—whether a stay of litigation will simplify the issues and facilitate the trial—is dispositive. Duke contends that "[c]ourts recognize several efficiencies flowing from PTAB review," Doc. 59 at 6–8 (collecting cases), while Marmon argues that any simplification is uncertain and speculative, Doc. 66 at 2–7. In particular, Marmon claims that streamlining will occur only "if the PTAB first institutes all seven of Duke's IPR petitions and then invalidates all 198 of the patents' asserted claims," and current PTAB practice suggests that "institution and invalidation of all seven asserted utility patents is doubtful." *Id.* at 2, 5–6.

Marmon's argument that a stay is not warranted because some claims may survive the IPR process misses the mark. "The relevant inquiry here . . . is not whether the IPR would completely resolve this case, but rather whether it could make this litigation simpler and more efficient." *Intell. Ventures*, 2014 WL 2511308, at *3 (citations omitted); *see also Ollnova*, 2023 WL 2784777, at *1 ("The [IPR] process offers a timely, cost-effective alternative to litigation, designed to produce a more efficient and streamlined patent system that improves patent quality and limits unnecessary and counterproductive litigation costs." (citation omitted)). Even if the PTAB only institutes and invalidates some of the IPRs, this case will undoubtedly be simplified—particularly given that the asserted utility patents "all belong to one of two patent families and share common specifications and claim terms." Doc. 68 at 1.

However, the Court agrees with Marmon that the potential for simplification is too uncertain at this stage. Marmon observes that "the PTAB discretionarily denies 60% of IPR petitions, and another 10% of all IPR petitions are denied after consideration on the merits." Doc. 66 at 5. In reply, Duke argues that "Marmon's 'settled expectations' theory does not make discretionary denial inevitable." Doc. 68 at 5–8. While the Federal Circuit has "expressed no

opinion" whether courts should "wait until the PTAB decides whether to institute IPR before granting a stay," *Masa*, 2016 WL 2622395, at *2, this Court is inclined to wait until the PTAB makes its institution decision here based on the particular progression of this litigation and the expectation that the PTAB will make a decision well in advance of the *Markman* hearing. *See In re Midwest Energy Emissions Corp. Pat. Litig.*, 2025 WL 2888368, at *3 (S.D. Iowa May 22, 2025) (recognizing the potential "efficiency advantages that come with proceeding with litigation until the PTAB decides whether to institute inter partes review" in certain circumstances). That said, if the PTAB decides to institute any of Duke's IPR petitions, the potential for simplification becomes significantly more likely.[1] In that scenario, the second factor would weigh in favor of granting a stay, and the Court would be inclined to grant a renewed stay motion on that basis.[2]

**CONCLUSION**

Accordingly, the Court **DENIES** without prejudice Duke Manufacturing Co.'s [58] Motion to Stay Pending Inter Partes Review Proceedings.

So ordered this 29th day of October 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

[1] Marmon's figures regarding PTAB denial rates are informative. While "the PTAB discretionarily denies 60% of IPR petitions," only "10% of all IPR petitions are denied after consideration on the merits." Doc. 66 at 5. Thus, while some of the IPR petitions that survive discretionary denial no doubt settle before the PTAB reaches a decision on the merits, these numbers indicate that IPR petitions are much more likely to result in the invalidation of a patent once instituted.

[2] If the PTAB does institute any of Duke's IPR petitions, the Court does not anticipate that full briefing will be necessary. Duke indicates that an institution decision is expected by January 2027 for the '002 Patent and by April or May 2027 for the remaining patents—with both decisions anticipated before the milestone of claim construction. Doc. 59 at 10 n.6. Because the Court's analysis on the first and third factors is unlikely to change appreciably, the second factor is likely to remain dispositive. Accordingly, before Duke files a renewed stay motion, it should confer with Marmon to determine whether additional briefing is necessary, and if not, it should indicate as such in any renewed motion, which the Court anticipates granting promptly in the event that the PTAB institutes any of its petitions.